In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-1267

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARCUS D. CANADY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 07 CR 61—**Barbara B. Crabb**, *Chief Judge.*

ARGUED OCTOBER 22, 2008—DECIDED AUGUST 24, 2009

Before CUDAHY, MANION, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Marcus Canady, a convicted felon, was found by a police officer in an overturned SUV with a semi-automatic weapon in his waistband. He was charged with unlawful possession of a firearm and ammunition. At trial, in addition to the officer's testimony, the government introduced evidence linking Canady to a home invasion and shooting earlier that night, where he used the same weapon. The jury convicted Canady.

Canady appeals his conviction and sentence because, he contends, the home invasion and shooting evidence was inadmissible, the district court improperly denied his theory of defense jury instruction, and the evidence did not support the district court's determination at sentencing that he used the gun in an attempted murder. We reject Canady's first argument because the home invasion and shooting evidence were integral in establishing his possession of the firearm. Next, we agree with the district court's determination that the evidence did not support Canady's theory of defense instruction, and we also conclude that the evidence supported the district court's findings during sentencing. Therefore, we affirm Canady's conviction and sentence.

## I. BACKGROUND

In the early morning on April 2, 2007, Brent Krause woke to discover an intruder, later identified as Duane Vance, in his living room bleeding from his face. Moments later, Krause heard the sound of breaking glass and saw another man enter through the front door. According to Krause, the second intruder displayed a small handgun and commanded him to follow Vance who, by that time, had fled toward the kitchen. Eventually, the commotion downstairs woke Krause's roommate who proceeded to yell at the intruders, threatening to call the police. The second armed intruder then ran out of the house through the front door. At the same time, Krause ran to the garage to get his shotgun and then outside to pursue him. Krause never caught up, but, through the scope of

his shotgun, Krause saw him enter a light gray compact SUV and take off swerving down the road. Vance, who was still bleeding from his face, ran across the street and collapsed by the side of the road.

That morning, Tony Pucillo, a Madison, Wisconsin police officer, received an emergency call regarding the home invasion at Krause's residence. He turned on his emergency lights and headed towards the scene of the crime. On the way, approximately a mile and a half from Krause's home, he spotted a gray Nissan Murano SUV rolled over at the side of the road. Officer Pucillo testified that the headlights were on, and, based on the smoke and dust coming from the vehicle, it appeared that the accident had "just happened." He stopped to investigate and found Canady inside the vehicle. Officer Pucillo said that he immediately noticed a semi-automatic nine millimeter handgun tucked in Canady's waistband and that he "ran" the gun back to the hood of his car. Kathryn Becker, a City of Fitchburg police officer, also saw the overturned SUV while responding to the home invasion. She testified that she accompanied Canady to the hospital, and, although he wasn't bleeding, she saw blood on Canady's jacket, pants, and shoes. Based on the evidence from the accident, a grand jury returned a superseding indictment charging Canady with possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g).

The government believed that the home invasion and accident that occurred in the early morning on April 2 were related. Specifically, its theory was that Canady

was the second intruder who entered the house with the gun, and that he had shot Vance in the head after a disagreement about drugs, followed him into Krause's home, and escaped in the Nissan Murano after Krause's roommate threatened to call the police. Nonetheless, the government filed a motion in limine to exclude evidence of the home invasion and shooting, provided that Canady did not present a defense denying that the officer found him with the gun in his waistband. The government eventually withdrew its motion in limine, however, because Canady indicated that he planned to use evidence of the events that occurred before the accident to demonstrate that Officer Pucillo's story was false.

As a result, the government presented evidence at trial to link Canady to both the home invasion and Vance's shooting. This included the testimony of Brent Krause who stated that the second intruder had hair styled in cornrows, wore a North Carolina jacket, and escaped in a light gray compact SUV—all of which closely matched the officers' observations at the accident scene. The government also presented a DNA analyst who testified that Vance's blood was found in the SUV and on the muzzle of the gun. Canady, on the other hand, denied that he had a gun in his waistband and argued that a third person was responsible for the shooting and home invasion. The jury found Canady guilty.

At the sentencing hearing, the district court adopted the presentence report's ("PSR") determination that Canady used the gun in connection with the attempted murder of Vance. This allowed the court, under U.S.S.G.

§ 2K2.1(c)(1), to sentence Canady using the base offense level for attempted murder, which was 27. *See* U.S.S.G. § 2A2.1(a)(2). The court also added two levels because the victim sustained serious bodily injury, U.S.S.G. § 2A2.1(b)(1), and, combined with Canady's criminal history, this resulted in an advisory guideline range of 188-235 months. As an alternative, the court noted that even without the attempted murder finding, Canady would have qualified for a four level enhancement for breaking into Krause's home with a gun, and an additional two level enhancement for using a large capacity semiautomatic firearm. U.S.S.G. § 2K2.1(a)(3). The court sentenced Canady to 120 months, the statutory maximum term of imprisonment for his charge. Canady appeals his conviction and sentence.

## II. ANALYSIS

### A. Admission of Home Invasion Evidence Was Proper

During trial, the government presented testimony linking Canady to the home invasion and shooting. At the time, Canady did not object to the introduction of this testimony. He now argues, however, that the district court erred in admitting this evidence because it only showed his propensity to commit the crime charged, and, as a result, deprived him of a fair trial. Before reaching the merits, we first address the government's claim that Canady waived this argument. The government initially presented a motion in limine to exclude evidence of the home invasion and shooting on the condition that Canady did not present a defense

denying that he possessed the firearm. Canady did not agree to these terms and indicated that he intended to use "evidence of a series of events" that occurred before the accident to show that he did not have a firearm in his waistband. This, according to the government, was a strategic choice which now precludes Canady from challenging the admissibility of the evidence on appeal.

The first question before us is whether Canady waived his right to challenge the admission of the evidence, which would preclude us from reviewing this argument on appeal, or whether he merely forfeited it, which would permit appellate review for plain error. Waiver is the intentional relinquishment of a known right, while forfeiture is the failure to assert a right in a timely fashion. *United States v. Irby*, 558 F.3d 651, 655 (7th Cir. 2009) (citing *United States v. Olano*, 507 U.S. 725, 733 (1993)) (quotation marks omitted). Waiver implies a knowing and intentional decision, but a forfeiture is more akin to an accidental or negligent omission. *See United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005) ("The touchstone of waiver is a knowing and intentional decision."). In most cases, when there is no sound strategic reason for failing to raise an issue before the district court, the omission is more appropriately characterized as a forfeiture rather than a waiver. *See, e.g.*, *United States v. Spells*, 537 F.3d 743, 747 (7th Cir. 2008) (noting that the waiver/forfeiture distinction required the court to determine whether the defendant's failure to object was part of a sound strategic decision); *Jaimes-Jaimes*, 406 F.3d at 848 (reviewing defendant's argument for plain error when it could not conceive of any strategic reason for the defendant's failure to raise the issue at trial).

The government proposes that Canady waived his objection to the home invasion and shooting evidence because he opposed the government's pretrial motion in limine to exclude that same evidence. Canady did indeed oppose the motion in limine, but that was because the government's motion was contingent upon Canady's agreement not to contest the possession issue. If Canady had not opposed the motion, then he would essentially have given up his entire defense. The motion in limine came with a catch, one that would have crippled Canady's defense. Under these circumstances, Canady's opposition to the motion is not necessarily inconsistent with the argument that the evidence should have been excluded.

This issue is further complicated, however, by Canady's attorney's statement at the pretrial conference. He stated that he intended to use evidence from events prior to the accident to cast doubt over Officer Pucillo's testimony, and the government suggests this was a strategic choice that invokes waiver. In *United States v. Clark*, 535 F.3d 571, 578 (7th Cir. 2008), for instance, we held that a defendant waived his challenge to the admission of certain evidence because he agreed before trial that the evidence was admissible and indicated his intent to use that evidence as part of his trial strategy. Here, Canady's situation is distinguishable. First, the attorney's statement in this case was made not to convince the judge to admit the evidence, but to reject the government's conditional motion in limine. Canady did not argue that the evidence was admissible, and the judge did not make a ruling on its admissibility. *Cf. United States v. Tann*, 532 F.3d 868, 872 (D.C. Cir. 2008) (finding a

forfeiture rather than a waiver where defendant merely acquiesced, but did not invite the district court's decision to admit evidence). Also, unlike the defendant in *Clark*, Canady's defense strategy at trial did not rely on any of the evidence that he now challenges, and the government points to no other strategic reason for Canady's failure to object. *See Jaimes-Jaimes*, 406 F.3d at 848 (finding forfeiture where there was no sound strategic reason for defendant's failure to object at trial). Because "[w]aiver principles should be construed liberally in favor of the defendant," *id*. at 848 (citing *United States v. Sumner*, 265 F.3d 532, 539 (7th Cir. 2001)), we give Canady the benefit of the doubt and construe his failure to object as a forfeiture.

Even so, this provides little benefit to Canady because he falls short of demonstrating plain error. Under this standard of review, we must determine whether: (1) an error occurred, (2) that was plain, (3) that affects the defendant's substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. McMath*, 559 F.3d 657, 667 (7th Cir. 2009) (citing *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)). Canady contends that the testimony of three witnesses—Krause, Officer Kelly Dougherty, and Officer Tim Smith—should have been excluded under Rules 403 and 404(b) of the Federal Rules of Evidence. Krause, the victim of the home invasion, provided a description of the armed intruder that resembled Canady. Officer Dougherty discussed her initial encounter with Vance as she responded to a home invasion call at Krause's residence. She stated that Vance was "covered

in blood from head to toe" and that he appeared to have been shot in the face. And Officer Smith's testimony concerned his examination of the gun found at the accident scene as well as the ammunition he retrieved from it. At one point, Officer Smith stated that he was wearing a protective suit to reduce the possibility of contamination in case the evidence was used again. The government concedes that the evidence of the home invasion and shooting was inadmissible under Rule 404(b) but argues that it was intricately related to the charged crime and was therefore admissible to prove an element of possession.

We disagree with Canady's interpretation of Rule 404(b) and we think the government concedes too much. Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence . . . more probable or less probable than it would be without the evidence," and Rule 402 states generally that all relevant evidence is admissible unless there are other reasons for its exclusion. The relevance of the home invasion and shooting is readily apparent; if the parties contest whether Canady possessed the gun in the SUV, evidence that he was seen with (and may have used) the gun minutes beforehand increases the likelihood that he possessed the gun in the car. Rule 404(b), which is a rule of exclusion, says that evidence of other crimes is inadmissible to show one's character but may be admissible for other purposes, including motive, intent, knowledge, and absence of mistake or accident. In applying this rule, we consider whether:

(1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the evidence has probative value that is not substantially outweighed by the danger of unfair prejudice.

*United States v. Vargas*, 552 F.3d 550, 554 (7th Cir. 2008) (citing *United States v. Diekhoff*, 535 F.3d 611, 617 (7th Cir. 2008)). Canady argues that the home invasion evidence was only directed toward his propensity to commit the crime charged, but he ignores the fact that possession of the handgun was the central issue at trial. "Possession of a firearm is a continuing offense which ceases only when the possession stops." *United States v. Fleischli*, 305 F.3d 643, 658 (7th Cir. 2002) (superseded by statute on other grounds). So if the government could show that Canady used the same firearm shortly before the accident, that fact would also support a guilty verdict for Canady's illegal possession charge. *Cf. Fleischli*, 305 F.3d at 658 (7th Cir. 2002) (finding that the district court did not err in admitting evidence of defendant's firearm possession in other districts in addition to the district where he was charged with possession of a firearm by a felon). That is exactly what happened here. Officer Pucillo claimed to have found a firearm in Canady's waistband, Canady challenged the accuracy of Pucillo's report, and the government presented evidence that

indicated that Canady used the same gun minutes before the accident, which, if true, would also support a guilty verdict. The home invasion evidence was clearly directed towards establishing that Canady possessed the firearm.

We must also reject Canady's argument that the evidence was insufficient to demonstrate that he was the second intruder in the home invasion. Although none of the witnesses personally identified Canady, Krause testified that the second intruder had hair styled in cornrows, wore a blue and white jacket, and fled in a light gray compact SUV. This description closely matched Canady's appearance when Officer Pucillo found him in an overturned gray Nissan Murano, a compact SUV. The home invasion and shooting evidence also had probative value that was not substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403. Although Officer Dougherty's statement that Vance was "covered in blood from head to toe" was largely unnecessary to prove the crime charged, the events surrounding the home invasion were instrumental in establishing a contested issue—Canady's possession of the firearm. The grisly details of Vance's injury explained why Canady had the firearm in the first place, and also lent support to Officer Pucillo's observations. Whatever prejudice Canady suffered from this evidence does not substantially outweigh its probative value, and its admission, at the least, was not plain error.

As a result, we need not consider the government's argument that the evidence was admissible under the

intricately related doctrine. We noted in *United States v. Taylor*, 522 F.3d 731, 734 (7th Cir. 2008), that this formula was "unhelpfully vague" and that courts had not agreed on its proper application—whether it was limited to evidence of the charged crime or whether it included evidence of another crime introduced solely to "complete the story." *Id*. at 735; *see also United States v. Harris*, 536 F.3d 798, 807 (7th Cir. 2008). This case may very well present the type of scenario for which the doctrine was originally intended. Evidence of Canady's firearm possession inevitably reveals the other crimes, and vice versa, because Canady committed several criminal acts (the home invasion, shooting, and unlawful possession of a firearm) within a very short time span, all while possessing the firearm. *See Taylor*, 522 F.3d at 735. However, as we recognized before, almost all evidence that is admissible under this doctrine would fall within one of the exceptions in Rule 404(b), and this case is no different. *Id*. Following the government's invitation to apply the doctrine here would be redundant and would only encourage its use in more difficult cases to skirt around the restrictions in the Federal Rules of Evidence. *See id*. We have no reason to rely on the intricately related doctrine to reach the conclusion that the district court did not err in admitting the home invasion and shooting evidence.

**B.  Canady Was Not Entitled to His Theory of Defense Jury Instruction**

Canady proposed jury instructions that stated, in part: "If you believe that someone other than Mr. Canady

shot Mr. Vance, left the gun in the vehicle, and Mr. Canady drove the vehicle away from the scene of the shooting without knowledge that the gun was in the car . . . you may not find the defendant guilty . . . ." The court refused to issue this instruction because, it concluded, the evidence did not support Canady's theory and it would only mislead the jury. Instead, the court defined "possession" of an object as "the ability to control it" and instructed the jury that "[p]ossession may exist even when a person is not in physical contact with the object, but knowingly has the power and intention to exercise direction or control over it." Canady argues that the court erred when it rejected his proposed jury instructions. We review de novo the district court's decision not to instruct the jury on a theory of defense. *United States v. White*, 472 F.3d 458, 461 (7th Cir. 2006).

A defendant is entitled to a jury instruction on a theory of defense if: (1) the instruction is a correct statement of law; (2) the evidence supports the theory of defense; (3) the theory of defense is not part of the charge; and (4) failure to provide the instruction would deny the defendant a fair trial. *United States v. Sawyer*, 558 F.3d 705, 710 (7th Cir. 2009). Canady's proposed instruction essentially told the jurors to find him not guilty if they believed that someone else shot Vance and placed the weapon in the car. Although a correct statement of logic (if he didn't do it, then he's not guilty), the instruction doesn't provide any information that is not already covered by the charge to the jury. The jury instructions specifically stated that "possession" meant the ability to control, or "knowledge of the power and intent to

exercise control over, the weapon." So if another person shot Vance and placed the weapon in the car, Canady could not have possessed the gun under either instruction. Moreover, Canady's theory of defense is unsupported by the evidence. Canady only needs to demonstrate a foundation in evidence, "however tenuous," to support his theory, but a "'mere scintilla' of evidence. . . is not sufficient to warrant a defense instruction." *United States v. Buchmeier*, 255 F.3d 415, 427 (7th Cir. 2001) (quoting *United States v. Wofford*, 122 F.3d 787, 789 (9th Cir. 1997)). The evidence which he claims pointed to the presence of a third person—a scribbled note found in the vehicle with another man's name, and Vance's statement to police that he was driving two men before he was shot—says nothing about the shooter's identity. The mere presence of a third person at some point before the shooting, without more, does not support Canady's theory that the third person was the shooter. Therefore, the district court correctly concluded that Canady was not entitled to his theory of defense instruction.

## C. Sufficient Evidence Supports Canady's Sentence

Canady also challenges the district court's application of the sentencing guidelines. In a situation where a defendant used a firearm "in connection with the commission or attempted commission of another offense," U.S.S.G. § 2K2.1(c) (the guideline for unlawful possession of a firearm) allows the court to sentence the defendant according to the guideline for the attempt of the second offense, but only if the new base offense level is higher

than it would have been under the original guideline. As a result, the district court found that the correct guideline to use was U.S.S.G. § 2A2.1(a)(2) because Canady used the gun in connection with the attempted murder of Vance. Canady argues that the cross-reference was improper because the evidence linking him to the attempted murder was unreliable. We review the district court's application of the sentencing guidelines de novo, *United States v. Abbas*, 560 F.3d 660, 662 (7th Cir. 2009), but where the court's application of the guidelines are based on factual findings, we review for clear error, *United States v. Wagner*, 467 F.3d 1085, 1089 (7th Cir. 2006).

Although Vance identified Canady as the shooter, Canady argues that the court erred in making this finding. Canady claims that Vance's statements to the police were unreliable because he was a suspect under the threat of police punishment and that none of the evidence before the court corroborated his accusations. These circumstances do not help Canady's case, however, because a motive to lie, or even a record of telling lies, does not render Vance's statements incredible as a matter of law. *Cf. United States v. Meyer*, 243 F.3d 319, 326 (7th Cir. 2000) (holding that sentencing judge was not precluded from relying on testimony from witnesses who had impure motives, criminal histories, and a record of telling lies); *see also United States v. Johnson*, 489 F.3d 794, 797 (7th Cir. 2007) ("[E]ven the testimony of a potentially biased witness is sufficient to support a finding of fact.") (citing *United States v. Zehm*, 217 F.3d 506, 514 (7th Cir. 2000)). Also, Krause's description of the armed intruder (which bore a striking resemblance to Canady), the discovery of Vance's blood on

Canady's jacket, and Officer Pucillo's testimony easily corroborate Vance's statements. The district court also provided alternate grounds for the sentencing enhancements, but we need not address them because the record clearly supports its initial finding that Canady committed attempted murder. The district court properly applied the cross-reference in section 2K2.1(c) and Canady is not entitled to a remand for resentencing.

## III. CONCLUSION

For these reasons, we AFFIRM Canady's conviction and sentence.