**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0523n.06

No. 13-1928

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 17, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| CASTLE DEKMANES JACKSON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: KEITH, CLAY, and McKEAGUE, Circuit Judges

**DAMON J. KEITH, Circuit Judge.** Defendant Castle Jackson was convicted by a jury of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). On appeal, Jackson challenges the denial of his motion to suppress, the restriction as to the scope of his girlfriend's testimony, and that he was denied the effective assistance of counsel. We **AFFIRM**.

I.

At approximately 1:50 AM on May 7, 2011, Michigan State Troopers Rick Kane and James Skrbec (herein "Trooper Kane" and "Trooper Skrbec") observed Jackson driving erratically near Flint, Michigan. Specifically, Trooper Kane saw Jackson's vehicle straddling the white line which separated the two northbound lanes. The police followed Jackson, but did not activate their sirens or lights. Trooper Kane next observed Jackson's car, operating in the left-hand passing lane, twice cross over the yellow line into the emergency center turn lane. Trooper Kane, having witnessed Jackson commit three traffic violations—failing to use a turn signal,

improper lane usage, and driving in the left lane while not passing—engaged his emergency lights and pulled Jackson over to the right-hand side of the road.

Trooper Kane approached Jackson's window, while Trooper Skrbec approached the passenger's side. The area was dimly lit. Chayla Page, Jackson's girlfriend, was sitting in the front passenger's seat of the vehicle. Jackson provided expired paperwork to Trooper Kane, who observed Jackson to have red eyes. Consequently, Trooper Kane ordered Jackson out of the car for a routine sobriety check. Once Jackson exited the vehicle, Trooper Kane asked Jackson to return the paperwork back in the car; Jackson went back into the car and moved toward the center console. Trooper Kane testified that, in his experience, most people immediately place their paperwork back in the car, but do not physically get back into the vehicle. Here, Jackson physically climbed into the car and put his right knee on the driver's seat. Trooper Kane, unable to see what Jackson was doing near the center console, twice ordered Jackson out of the car, to which Jackson did not immediately assent. Trooper Kane testified that "[Jackson] was doing something with his hands," that he couldn't see, causing the trooper to fear for his safety. Kane then physically pulled Jackson out of the car, and, in the process, felt an object in Jackson's pocket which he immediately recognized to be a firearm. Trooper Kane pinned Jackson to the car and called for Trooper Skrbec to remove the firearm. The officers then arrested Jackson, who was also given a civil infraction for his erratic driving.[1]

Jackson moved to suppress the firearm and an evidentiary hearing was held on January 17, 2012. After additional briefing, the district court denied Jackson's motion. R. 23. A jury trial began on February 25, 2013. At trial, Jackson, whose defense was primarily that he did not

---

[1] Jackson's Breathalyzer examination registered as .000, however.

know whose gun he was carrying nor whose jacket he was wearing, called his girlfriend to testify, in part about her familiarity with Jackson's history with carrying firearms—specifically, his lack thereof. While the jury was excused, the court discussed whether the prospective testimony would violate the rules governing character evidence. In response to Jackson's argument that the testimony was admissible, the government asked the court to constrain the scope of Page's testimony to her knowledge of his gun carrying habits as to *that day*, precluding testimony as to prior non-possession of firearms. The district court struck a middle ground, ruling that Page could testify as to whether she had seen Jackson with the *charged firearm* at any time before the arrest, but disallowed any testimony as to possession or non-possession of firearms in general, on grounds that it would constitute improper character evidence. Jackson did not object to the ruling.

Later at trial, the government introduced a phone call between Jackson and Page, recorded when Jackson was incarcerated. Before the call was admitted and put forth to the jury, the district court called a sidebar and asked if defense counsel had any objection to its introduction, to which defense counsel replied "No." The government also introduced three other calls which derive from Jackson's incarceration, to which Jackson also failed to object.

Jackson was convicted on February 27, 2013, and the district court sentenced him to the mandatory minimum term of 15 years in prison. Jackson appeals.

## II.

Jackson challenges the constitutional validity of both the original stop of his car and the "frisk" which precipitated the recovery of the firearm. We review the district court's findings in a denial of a motion to suppress for clear error, *United States v. Simpson*, 520 F.3d 531, 534 (6th

Cir. 2008), whereas we review its conclusions of law *de novo*, *United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007). The evidence is reviewed in the light most favorable to the district court's decision. *United States v. See*, 574 F.3d 309, 313 (6th Cir. 2009).

The evidence adduced at the evidentiary hearing established that Trooper Kane witnessed Jackson commit three motor vehicle infractions before activating his emergency lights and pulling over Jackson. Police may stop a car if they have probable cause to believe a civil infraction has occurred. *Gaddis v. Redford Twp.*, 364 F.3d 763, 770 (6th Cir. 2004). Likewise, the authorities may stop a car if they have a reasonable suspicion of criminal activity, including drunk driving. *Id.* In the light most favorable to the district court's decision, Trooper Kane had veritable cause to believe Jackson committed multiple civil motor vehicle infractions before pulling him over. Moreover, given the time of night, and the erratic nature of Jackson's driving, a strong case may be made that Kane reasonably suspected that Jackson was driving under the influence of alcohol. Accordingly, we find that the stop was proper. *See id.*

> A. Forcibly removing Jackson from the car, which in turn yielded the recovery of the weapon, was proper.
>
> i. Force

Jackson makes two arguments with respect to this particular issue: 1) the troopers "did not have sufficient cause to *forcibly* remove him from the car,"[2] and 2) that the troopers did not have cause to seize the weapon from his pocket. The first argument is addressed under the law of "seizure," and the second as incident to a *Terry* stop. We address the arguments in turn.

---

[2] Jackson does not object to Trooper Kane's command that he exit the vehicle once Jackson reentered the car to return his registration documents; rather, Jackson's objections begin from his physical removal from the vehicle and continue through the removal of the weapon. Appellant's Br. at 23.

As an initial matter, Jackson did not contest Trooper Kane's use of force in the lower court—he instead only argued that the pat frisk which yielded the weapon was improper, and that his detention as unduly long. Accordingly, the review is for plain error. *United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998). Although not categorized as such by the parties, Jackson's forcible removal constitutes a "seizure" under Fourth Amendment analysis. *California v. Hodari D.*, 499 U.S. 621, 624, 690 (1991) ("the quintessential 'seizure of the person' under our Fourth Amendment jurisprudence—the mere grasping or application of physical force with lawful authority whether or not it succeeded in subduing the arrestee, was sufficient"); *Terry v. Ohio*, 392 U.S. 1, 16 (1968) ("whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."). Here, Jackson is essentially arguing that, given his ostensibly innocuous conduct, Trooper Kane had no cause to physically pull him out of the vehicle.

Jackson must show that the force Trooper Kane used to effect the seizure was unreasonable, which requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Slusher v. Carson*, 540 F.3d 449, 455 (6th Cir. 2008) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "Relevant factors to consider in evaluating what level of force is reasonable include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id*. (quoting *Graham*, 490 U.S. at 396). Here, on the side of a highway, at nearly 2:00 AM, suspecting that Jackson was intoxicated, unable to ascertain as to why Jackson was reaching into the center console, and *after* multiple attempts to

5

ask him out of the car went unheeded, the facts give rise to an inference that Jackson posed a reasonable threat. Unable to see what Jackson was doing, Trooper Kane could have reasonably suspected that Jackson was reaching for a weapon. This, along with the low level of intrusion—Jackson was not slammed to the ground or otherwise injured—supports a conclusion that Trooper Kane's actions were reasonable under the circumstances. Accordingly, this argument fails, and no error occurred.

ii.   Removal of the weapon—the "pat frisk."

Jackson alleges that Trooper Kane's actions—pulling him out of the vehicle and seizing the firearm from his pocket—amounted to an unjustifiable pat frisk, constituting an unreasonable search under the Fourth Amendment. On the contrary, Trooper Kane stated that: "[Jackson] was trying to pull away. I pushed him up next to the car and immediately felt a gun in his right front jacket pocket." At this point, having pinned Jackson's arms to the car, Trooper Kane enlisted Trooper Skrbec to remove the weapon from Jackson's jacket pocket.

Although not an exact fit, Jackson categorizes the recovery as incident to a constitutionally violative pat frisk. To conduct a justifiable pat frisk, the officer must have a reasonable belief that the individual to be searched has placed the officer, or those around him, in danger. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). What constitutes a "reasonable suspicion" of danger depends on the specific facts of the case and looks to the totality of the circumstances. *United States v. Smith*, 594 F.3d 530, 537, 542 (6th Cir. 2010). Here, the evidence provides ample support for the proposition that Trooper Kane had reason to suspect that he was in danger. Jackson was stopped, possibly intoxicated, at around 2:00 AM in a dimly-lit area, and ignored Trooper Kane's multiple requests to exit the vehicle. Moreover, Jackson appeared to be reaching

into the center console, with his hands obscured from plain view. The totality of the circumstances indicates that Trooper Kane's suspicions were well-grounded and thus the pat frisk for weapons was proper. Thus, Jackson's claim fails.

> B. The district court did not abuse its discretion in restricting the scope of Page's testimony.

The defense sought to elicit testimony from Chayla Page, Jackson's girlfriend, who was to testify as to her familiarity with Jackson's firearm-carrying habits (specifically, that she did not know him to carry guns). Finding that testimony as to firearm-carrying habits in general to be impermissible character evidence, the district court, while the jury was excused, allowed Page only to testify as to her familiarity with the particular firearm in the indictment. Jackson asserts that this ruling denied him the ability to put forth a complete defense. *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986). Jackson is incorrect.

As an initial matter, Jackson failed to object to the ruling at the sidebar, when he had a full opportunity to do so, and thus his objection is not preserved. *Johnson v. United States*, 520 U.S. 461, 466–67 (1997); *see also United States v. Roach*, 502 F.3d 425, 441 (6th Cir. 2007) ("defendants preserved their claim regarding the district court's questioning of Chief Shults by objecting to the questioning in a sidebar conference during the next recess in the trial."). Accordingly, we review for plain error. *Johnson*, 520 U.S. 461, 466-67. Under the plain-error lens, Jackson must show that there is 1) error, 2) that is plain, and 3) that affects substantial rights and if so, he must persuade us that 4) the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings. Fed. R. Crim. P. 52(b); *United States v. Yancy*, 725 F.3d 596, 601 (6th Cir. 2013).

Jackson cannot succeed with his challenge because "a complete defense does not imply a right to offer evidence that is otherwise inadmissible under the standard rules of evidence." *United States v. Lucas*, 357 F.3d 599, 606 (6th Cir. 2004) (citation omitted). The only logical inference to be drawn from the proferred testimony—that Page had never seen Jackson carry a firearm before, and thus for him to be carrying a firearm on this particular time would be uncharacteristic—runs directly afoul of Federal Rule of Evidence 404(a). (Evidence of a person's character may not be offered "for the purpose of proving that he acted in conformity therewith on a particular occasion.").

Here, the district court correctly constrained the scope of Page's testimony to the *specific weapon* alleged in the indictment. *Cf. United States v. Canady*, 578 F.3d 665, 671–72 (7th Cir. 2009) (prior use of the same gun admitted to show possession). However, "if the prior possession was of a different gun, then its value as direct or circumstantial evidence of the charged possession drops and the likelihood that it is being used to show propensity to possess guns rises considerably." *United States v. Miller*, 673 F.3d 688, 695 (7th Cir. 2012). Accordingly, the district court did not err in limiting the testimony to only that particular gun. To have ruled otherwise would have allowed Jackson to present evidence that would have explicitly contravened Federal Rule of Evidence 404(a), and thus Jackson's argument that he was prevented from putting forth a complete defense fails.

C. We need not review Jackson's ineffective assistance of counsel claim.

Generally, defendants may not bring ineffective assistance of counsel claims on direct appeal. *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005). An exception may be drawn where the record on direct appeal is sufficiently developed. *See United States v.*

*Woodruff*, 735 F.3d 445, 451 (6th Cir. 2013). However, in *Woodruff*, we held that where the defendant fails to provide an "affidavit or testimony from [his] trial counsel explaining his [ineffective conduct,]" we will decline to address the alleged ineffectiveness. *Id.* at 452. As Jackson has not provided an affidavit or testimony from his trial counsel, we should decline to review his claim. Accordingly, and for the above-stated reasons, we **AFFIRM**.