In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 07-2278

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BRYAN R. LANG,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 06 CR 50013—**Philip G. Reinhard**, *Judge.*

_____

ARGUED MARCH 31, 2008—DECIDED AUGUST 8, 2008

_____

Before KANNE, EVANS, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.*   Bryan Lang appeals the four-level enhancement he received pursuant to U.S.S.G. § 2K2.1(b)(6). He argues that his trade of a firearm in exchange for drugs was improperly characterized as "use" of the firearm for purposes of the enhancement. We disagree, and affirm Lang's sentence.

### I. HISTORY

Bryan Lang, a convicted felon, used a .38 caliber hand-gun to purchase cocaine in February 2006. Lang was

short on cash, so he traded the gun for the drugs in the parking lot of a Rockford, Illinois bar. The exchange was observed by FBI agents who were conducting surveillance at the location. After questioning him about the transaction, law-enforcement officers arrested Lang on February 25, 2006. He was charged by indictment with being a felon in possession of a firearm. *See* 18 U.S.C. § 922(g)(1). He entered a guilty plea without a written plea agreement with the government.

Lang's Presentence Report included a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6), which calls for the enhancement if the defendant "used or possessed any firearm or ammunition in connection with another felony offense," or if the defendant "possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." After adding the four levels, Lang's total offense level was 25, and his Criminal History Category was VI. This subjected Lang to a guidelines range of 110 to 137 months' imprisonment. The statutory maximum for his offense was capped at 120 months.

Lang objected to the § 2K2.1(b)(6) enhancement, arguing that the guidelines did not contemplate its application where the defendant exchanged his firearm for cocaine. The district court disagreed. Although the court did not think Lang's conduct fell under the second provision of § 2K2.1(b)(6) because he did not possess or transfer the gun with "knowledge, intent, or reason to believe that it would be used in connection with another felony offense," the court viewed Lang's conduct as falling within the first part of § 2K2.1(b)(6) because Lang had used the firearm as an "item of trade" in an illicit

cocaine deal that would constitute a felony under either federal or Illinois law.

After considering the sentencing factors enunciated in 18 U.S.C. § 3553(a), the court sentenced Lang to 110 months' imprisonment. Lang timely filed this appeal.

## II. ANALYSIS

The sole issue on appeal is whether the district court erred by applying the four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6). Lang argues that the text of the guidelines delineates between "use" and "transfer," and that the district court should not have viewed Lang's bartering of his gun for drugs as "use" under the first provision of § 2K2.1(b)(6), because he actually "transferred" the gun. According to Lang, transfers are excluded in the first part of the provision, and the district court erred by categorizing Lang's gun activity as use.

We review *de novo* the district court's legal interpretation of the sentencing guidelines, *United States v. Katalinic*, 510 F.3d 744, 746 (7th Cir. 2007), as well as its application of the guidelines to the facts of the case, *United States v. Samuels*, 521 F.3d 804, 815 (7th Cir. 2008). Specifically, we are reviewing the district court's determination that a defendant's exchange of a gun for cocaine was considered "use" of the firearm in connection with the felony offense of cocaine distribution or sale, pursuant to U.S.S.G. § 2K21.1(b)(6).

In *Smith v. United States*, 508 U.S. 224, 241 (1993), the Supreme Court considered what "use" meant for the purposes of 18 U.S.C. § 924(c)(1), which prescribes an enhanced penalty if a person uses a fiream in relation to a

crime of violence or drug trafficking crime. Although the language in § 2K2.1(b)(6) is different from the statutory language at issue in *Smith*, the Supreme Court's reasoning and ultimate definition of "use" is persuasive here. "[A] criminal who trades his firearm for drugs 'uses' it during and in relation to a drug trafficking offense within the meaning of § 924(c)(1)." *Id.* The Court explained that the attempted drug deal in that case—involving a purchaser who attempted to trade his firearm for cocaine—would not have been possible but for the trade of the gun, so the gun's role in the furtherance of the defendant's activity was not accidental or coincidental. *Id.* at 237-38. Because the gun played an "integral part" in the attempted offense, it was "used" in relation to the drug trafficking crime. *Id.*

The Supreme Court recently upheld *Smith* in *Watson v. United States*, but limited its scope: *Smith* "addressed only the trader who swaps his gun for drugs, not the trading partner who ends up with the gun." *Watson v. United States*, 128 S. Ct. 579, 583, 585 (2007). The Court again explained that the person who hands over a firearm in exchange for something else "uses" it in order to secure the desired item, but the person who simply receives the item in a barter transaction does not use it. *Id.* at 583. The Court's distinction between the giver and the receiver of a firearm in a trade reflects the same distinction we recognized in *United States v. Westermoreland*, 122 F.3d 431, 436 (7th Cir. 1997). " 'A seller does not 'use' a buyer's consideration.' " *Watson*, 128 S. Ct. at 583 (quoting *Westermoreland*, 122 F.3d at 436).

Lang argues that the still-valid holding of *Smith* is not analogous here because the statutory language in 18 U.S.C. § 924(c)(2) (at issue in *Smith* and *Watson*) differs from the

language in § 2K2.1(b)(6) of the Sentencing Guidelines. Section 924 prescribes an enhanced penalty if a person, "during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm . . . ." Section 2K2.1(b)(6) provides for a four-level enhancement of the offense level if the defendant either "used or possessed any firearm or ammunition in connection with another felony offense," or "possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense . . . ." Lang argues that because the second provision of § 2K2.1(b)(6) specifically mentions "transfers" of firearms, the word "used" in the first provision does not encompass transfers.

To prevail on this argument, Lang would have to convince us that the presence of the word "transferred" in the second provision of § 2K2.1(b)(6) modifies the word "used" in the first provision, because, as normally read, the word "used" means having employed an item for some purpose. *See Watson*, 128 S. Ct. at 583 ("With no statutory definition or definitive clue, the meaning of the verb 'uses' has to turn on the language as we normally speak it . . . . When Watson handed over the drugs for the pistol, the officer 'used' the pistol to get the drugs"); *Smith*, 508 U.S. at 228 ("'When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning.'" (citing *Perrin v. United States*, 444 U.S. 37, 42 (1979))). The ordinary meaning of the word "use" in relation to a firearm-for-drugs trade was explained in *Watson*, *see* 128 S. Ct. at 583, and that meaning expressly contemplates what happened with Lang—he traded his gun for cocaine. *See also Smith*, 508 U.S. at 229 ("By attempting to trade his MAC-10 for the drugs, he 'used' or 'em-

ployed' it as an item of barter to obtain cocaine; he 'derived service' from it because it was going to bring him the very drugs he sought.").

"Use" is a broader concept than "transfer," and nothing in the text of § 2K2.1(b)(6) suggests that the sentencing commission's choice of "use" would exclude the type of use at issue here—trading a firearm for drugs. A firearm can be used as a form of currency to purchase an item in trade, *see Watson*, 128 S. Ct. at 583, or it can be used as a firearm, *see Smith*, 508 U.S. at 236. It might also be used as a device for bludgeoning. *See id.* at 232. Use and transfer are not synonymous—the dictionary defines transfer as: "to convey or cause to pass from one place, person, or thing to another." American Heritage Dictionary of the English Language (4th ed. 2000). The term "transfer" contemplates more than the type of exchange involved here—transferring includes passing a gun to another person for nothing in exchange. Simply put, a defendant may use a weapon in one of several ways; one of those ways might be to transfer it. Because use is a broader concept than transfer, the presence of transfer in the second provision of § 2K2.1(b)(6) does not suggest that it should also have been present in the first provision of § 2K2.1(b)(6) to apply the enhancement in a case where the defendant's use of the weapon could also broadly be classified as a transfer.

Further, the Application Note to § 2K2.1 suggests that the word "used" should be read very broadly in subsection (b)(6): "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia . . . application of subsection[ ] (b)(6) . . . is warranted because the presence of the firearm has the potential of

facilitating another felony offense . . . ." U.S.S.G. § 2K2.1 application note 14(B). If merely finding a firearm near drugs allows for the application of subection (b)(6) and its four-level enhancement, certainly Lang's active employment of the firearm as part of the drug-trafficking crime falls within the scope of the provision.

Finally, as the governmnet points out in its brief, the two provisions in § 2K2.1(b)(6) speak to different scenarios. The first provision—in which the verbs "used" and "possessed" are employed—addresses situations where the defendant himself commited the additional felony. The second provision—in which the verbs "possessed" and "transferred" are employed—addresses situations where the defendant merely knew, intended, or had reason to know that the firearm would be used or possessed in a separate felony. The second provision contemplates felonies committed by third parties—it does not make sense in such a scenario to employ the word "used" because the defendant himself would likely not be present at the felony that he has knowledge, intent, or reason to believe will ensue, *see id.*, or at the very least, the defendant would not be committing the other felony. His contribution to that felony would be in providing the firearm—not in personally using the firearm as a weapon, bludgeoning device, or item of trade. A defendant who is participating in a crime can personally use a weapon in one of several ways, as previously discussed—such conduct would fall under the first provision. A defendant who knows about another crime he is not in the process of committing can provide a weapon by "transferring" it with knowledge, intent, or reason to be believe it will be used or possessed in connection with the other felony offense—such conduct would fall under the second provision.

### III.  CONCLUSION

Lang's sentence is AFFIRMED.