In the

# United States Court of Appeals

### For the Seventh Circuit

Nos. 13-2894

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KENNETH SCHMITT,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Evansville Division.
No. 3:11-cr-48 — **Richard L. Young**, *Chief Judge.*

ARGUED FEBRUARY 18, 2014 — DECIDED OCTOBER 20, 2014

Before ROVNER, WILLIAMS, and TINDER, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Law enforcement officers found drugs and an assault rifle in Kenneth Schmitt's home while executing a warrant for his arrest. Because they were found in plain view in the course of conducting a reasonable protective sweep, the district court did not err in denying Schmitt's motion to suppress evidence of the firearm. Nor did the district court err in allowing much of the drug evidence that was admitted against Schmitt at trial, including

his conviction record for possessing marijuana with the intent to distribute it. However, the district court should not have admitted Schmitt's conviction for possession of methamphetamine since Schmitt did not open the door to that evidence and it was not relevant at trial except to impeach the government's own witness who claimed during direct examination that the methamphetamine belonged to him. But the error was harmless because the government's case would not have been substantially less persuasive without it. Finally, the district court did not err in enhancing Schmitt's base offense level after concluding that he possessed the firearm in connection with the sale of drugs or in finding that Schmitt's eleventh-hour decision to admit guilt—after he was convicted—was insufficient to qualify him for a reduction in his offense level for accepting responsibility. Therefore, we affirm Schmitt's conviction and sentence.

## I. BACKGROUND

In December 2010, Evansville Police Department Detective Chris Georgen received a tip from his informant, Kenneth Hutchinson, that Kenneth Schmitt had recently acquired an AR-15 semi-automatic assault rifle in exchange for $200 and two grams of methamphetamine. How did Hutchinson know this? Because he was the middleman who set up the deal between Schmitt and the seller of the automatic rifle. And Hutchinson, who was Schmitt's neighbor, told Det. Georgen that Schmitt was keeping it at home. Det. Georgen and other officers followed up on the tip by watching Schmitt's residence. They saw Schmitt come to the front door and several other people enter and exit the home. Armed with a warrant to arrest Schmitt, several SWAT officers entered Schmitt's residence the next day and within five

minutes the officers found Schmitt and Jason Wyatt. They also found, in plain view, marijuana, methamphetamine, and pills containing controlled substances. Less than five minutes after entering the house, SWAT Officer Craig Pierce went into the basement and saw an AR-15 semiautomatic rifle and two fully loaded magazines in a black gun case. Det. Georgen then obtained a search warrant to seize the drugs, firearm, and related evidence found while executing the arrest warrant.

Schmitt was indicted for possessing a firearm while being a felon, in violation of 18 U.S.C. § 922(g)(1). He filed a pretrial motion to suppress evidence related to the rifle, but the district judge found that it was seen in plain view during a protective sweep and denied the motion. Schmitt, who had pled guilty in state court to possession of the drugs found in his home, also moved to exclude evidence regarding "any drug use, drug possession, or drug dealing alleged to have been engaged in by" him. The government argued that the drugs that were found in Schmitt's home, as well as the evidence that he was a drug dealer and used drugs to purchase the firearm, were relevant to show why Schmitt had the rifle. Finding that the drug evidence was "inextricably intertwined with the charged act," "put the facts in context, filled gaps," and "would be a motive for the defendant to have a firearm," the court concluded that the probative value of the drug evidence outweighed its prejudicial effect. The court denied Schmitt's motion and allowed drug evidence to be admitted at trial, in addition to evidence that Schmitt pled guilty to possessing the drugs found in his home the day he was arrested.

So, at trial, Hutchinson testified that he had on occasion bought methamphetamine and marijuana from Schmitt in Schmitt's home and also saw him sell pills from his home. Det. Georgen testified about the firearm and ammunition found in the basement, as well as the methamphetamine, marijuana, and digital scale that were found in Schmitt's home during his arrest. He told the jury that the quarter gram of methamphetamine found was an amount a user would have, but that the quarter pound of marijuana was an amount a drug dealer would keep on hand.

Collectively, Det. Georgen and Hutchinson's testimony raised the inference that the drugs in Schmitt's home were his and that he bought the rifle to protect his drug dealing business. But Schmitt's friend Wyatt, who was the government's witness, offered a different view. He testified that the drugs found in Schmitt's residence belonged to him. This first came up during direct examination in the government's case, when Wyatt said that he was present during the arrest because he "had some meth [and] was getting [Schmitt] high." During cross-examination, defense counsel got Wyatt to admit that the methamphetamine, marijuana, pills, and digital scale found in Schmitt's home all belonged to Wyatt.

The following day, after the government rested, the defense called Det. Georgen back to the stand. The government sought to elicit testimony from Det. Georgen during cross-examination that Schmitt pled guilty to possessing the drugs that were found on the scene—the same drugs Wyatt testified belonged to Wyatt. The government also moved to admit Schmitt's record of conviction, arguing that the testimony and conviction record were admissible because the defense "elicit[ed] the testimony that [the drugs] were Wyatt's

drugs" and opened the door to admitting evidence of the drug conviction. Defense counsel objected, asserting that admission would unfairly prejudice Schmitt in violation of Rule 403, and because defense counsel doubted the validity of the document. After defense counsel confirmed that he planned to talk about Wyatt's admission to owning the drugs during his closing argument, the judge allowed the government to introduce Schmitt's state conviction record through Officer Georgen's testimony.

The jury convicted Schmitt, and the judge at sentencing applied a four-level enhancement to Schmitt's base offense level after finding that he possessed a firearm in connection with another felony offense. The judge also rejected Schmitt's request for a two-point sentencing level reduction for accepting responsibility. Schmitt was sentenced to 110 months' imprisonment and three years of supervised release. He appeals both his conviction and sentence.

## II. ANALYSIS

### A. No Error in Admitting Firearm Evidence

Schmitt first argues that the district court erred in denying his motion to suppress the semiautomatic gun, related exhibits including the gun case and ammunition, and testimony regarding the gun because it was all fruit of an illegal search. For this claim, "we review the district court's legal conclusions de novo, and its factual findings for clear error." *United States v. Huart*, 735 F.3d 972, 974 (7th Cir. 2013).

Schmitt's position is that the officers had to stop their search once they apprehended Schmitt because they only possessed an arrest warrant. But the district court found that Officer Pierce's search of the basement, which Schmitt ar-

gues occurred after the officers apprehended him and Wyatt, was permissible as a protective sweep. Schmitt now asserts that the protective sweep doctrine did not give Officer Pierce the authority to open the locked basement door and search the basement, where the firearm was found in its case in plain view, because the door locked from the outside and anyone inside the basement could not get out to harm the officers, and so officer safety was not a legitimate concern.

*Maryland v. Buie*, 494 U.S. 325 (1990), and its progeny foreclose Schmitt's arguments. "A 'protective sweep' is a quick and limited search of premises, incident to an arrest," and can be conducted without a search warrant if the purpose of the search is "to protect the safety of police officers or others." *Id.* at 327; *United States v. Burrows*, 48 F.3d 1011, 1015 (7th Cir. 1995). In light of the doctrine's focus on safety, this exception to the Fourth Amendment's warrant requirement "is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Buie*, 494 U.S. at 327. Therefore, officers may, "without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Id.* at 334. But in order to search beyond the immediate area, the officer must have "articulable facts which . . . would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* Whether the exception applies depends on whether the search was reasonable under the circumstances. *Burrows*, 48 F.3d at 1015.

The dozen or so officers who entered Schmitt's residence fanned out to search for Schmitt and to ensure each other's

safety. Officer Pierce testified that he entered the basement with the same goal in mind—to ensure officers' safety, or in the words of the officer in *Buie*, "in case there was someone else down there." *Id.* at 328. We do not have to decide whether the basement "immediately adjoin[ed] the place of [Schmitt's] arrest," since the officers had reason to believe that danger lurked behind the basement door. Specifically, officers observing Schmitt's house the previous day saw several people enter Schmitt's home. They knew Schmitt had a violent criminal history, including arrests for resisting law enforcement, pointing a firearm, and battery by means of a deadly weapon. And they had information that a firearm was present in the house. A reasonably prudent law enforcement official faced with this combination of facts would be concerned about his safety when entering the home. *See Burrows*, 48 F.3d at 1017 (finding search reasonable where arrest was made in a violent area, the defendant had a violent history, and circumstances on the scene suggested that violence may erupt).

Schmitt's contention that he and Wyatt were arrested before Officer Pierce went into the basement does not change our conclusion. There is no evidence on the record, other than Schmitt's word, to establish that he was arrested before the sweep of his basement. Even if we assume that Schmitt is right, we cannot say that the officers had identified Schmitt, or that Officer Pierce was aware that Schmitt had been apprehended before proceeding to the basement. Nor does the fact that the basement door was locked alter the analysis. A locked door would not protect the officers if a person with a gun decided to kick the door down or shoot through it. *See Burrows*, 48 F.3d at 1017 (finding protective sweep of four bedrooms and closet near bathroom where defendant was

located reasonable even though officers had to force open four locked doors). Law enforcement officers' interest in ensuring their safety "justifies their ensuring that the dwelling does not harbor another person who is dangerous and who unexpectedly could launch an attack." *Id.* at 1015. Given that several people were seen in the house the previous day, the officers were faced with the possibility that someone else was in the residence who presented a threat to them.

Moreover, the officers' right to sweep the premises does not end the moment the targeted individual is arrested. *See Buie*, 494 U.S. at 336 (holding that the authority to conduct a protective sweep persists as long as it takes to reasonably complete the arrest and depart the premises); *Burrows*, 48 F.3d at 1017 ("[O]fficers ha[ve] the right to ensure their safety and the safety of everyone else in the area not only during the arrest itself but also during the remainder of the time that they [are] legally on the premises and its environs."). Here, Schmitt does not dispute that the entire incident—the entry, arrest, sweep, and exit—occurred within five minutes, and there is no evidence that the officers delayed the arrest and exit process to further efforts to uncover contraband. *See Burrows*, 48 F.3d at 1017 (finding the search reasonable in part because execution of arrest warrant "took no more than five minutes, an interval compatible with the officers' legitimate purpose"). The officers' quick sweep of Schmitt's home and basement was permissible as a protective sweep because it was conducted to apprehend the suspect and to ensure the officers' safety, and lasted no longer than reasonably necessary. *See Buie*, 494 U.S. at 334-35 (noting that the sweep must end when the reasonable suspicion of danger has been dispelled); *Burrows*, 48 F.3d at 1017 (applying the reasonably prudent officer test to uphold the sweep for safety). As the

search was reasonable and the gun was found in plain view, the district court did not err in denying Schmitt's motion to suppress the firearm.

### B. Admission of Drug Dealing, Conviction, and Drug Possession Evidence

Schmitt also contests the district court's denial of his motion to exclude evidence of his drug possession and drug dealing under Federal Rule of Evidence 403. We review evidentiary rulings, including the district court's decision to admit evidence of other bad acts, under an abuse of discretion standard. *United States v. Harris*, 587 F.3d 861, 864 (7th Cir. 2009). Under this standard, we will defer to the district court unless no reasonable person could adopt its view. *See United States v. LeShore*, 543 F.3d 935, 939 (7th Cir. 2008). Even then, "reversal only follows if admission of the evidence affected the defendant's substantial rights"; in other words, if the "average juror would find the prosecution's case significantly less persuasive without the improper evidence." *United States v. Garcia-Avila*, 737 F.3d 484, 490 (7th Cir. 2013) (quotations omitted).

Schmitt argued that his alleged drug use, possession, and dealing were not relevant to the firearm possession charges. He also argued that "even if the court deems said evidence to be relevant, the prejudicial effect . . . would greatly outweigh any probative value under Rule 403 of the Federal Rules of Evidence," and "would tend to confuse [and] inflame the jury." The district court disagreed, finding the evidence relevant. The court also concluded that the probative value of the evidence that Schmitt was a drug dealer, that he used drugs to purchase a firearm, and that marijuana, methamphetamine, and pills were found in plain view in his resi-

dence when he was arrested, outweighed any prejudice Schmitt would suffer from its admission. Schmitt renews his arguments on appeal.

We begin our inquiry by focusing on whether the drug evidence was relevant to an issue at trial and otherwise admissible. Of course, evidence must be relevant to be admissible, but not all relevant evidence is admissible. *See* Fed. R. Evid. 402; *United States v. Gomez*, 736 F. 3d 845, 853 (7th Cir. 2014) (en banc). Evidence of a defendant's other bad acts, which is introduced only to show his propensity to commit crimes, is inadmissible under Rule 404(b). Fed. R. Evid. 404(b); *Harris*, 587 F.3d at 864. But if that evidence is relevant because it serves another purpose, "such as proving motive," Fed. R. Evid. 402, 404(b), then it may be admitted so long as the district court satisfies that the other purpose is relevant through a "propensity-free chain of reasoning" at issue in the case, that the evidence is relevant to that issue, and that the probative value of the evidence is not substantially outweighed by the evidence's prejudicial effect. *Gomez*, 763 F.3d at 852, 856; *see also United States v. Chapman*, 765 F.3d 720, 722 (7th Cir. 2014) (stating that other-act evidence "may be admitted for another purpose *provided* that the evidence is relevant under a theory that does not rely on an inference about the actor's propensity" (emphasis in original)); *United States v. Miller*, 673 F.3d 688, 692 (7th Cir. 2012). So this evidence may not be admitted as a matter of course, but the court should instead consider "the 'legitimacy of the purpose for which the evidence is to be used and the need for it.'" *Gomez*, 763 F. 3d at 853 (quoting *Miller*, 673 F.3d at 692).

This determination is case-specific, and involves considering whether the proffered reason for the evidence is at issue in the trial and whether the proffered evidence is relevant to that permissible purpose. *See Miller*, 673 F.3d at 696 (recognizing that "Rule 404(b) does not provide a rule of automatic admission whenever bad acts evidence can be plausibly linked to 'another purpose' … listed in the rule"). It is also helpful for the trial court to "look[] beyond the purposes for which the evidence is being offered and consider[] what inferences the jury is being asked to draw" to determine whether "the jury is essentially being asked to rely on the evidence as proof of the defendant's propensity to commit the charged offense" or on some other logical and important connection between the other bad act evidence and the charged criminal conduct. *United States v. Lee*, 724 F.3d 968, 978 (7th Cir. 2013).

The district court's conclusion that the drug evidence was "inextricably intertwined" with the charged act and "fill[ed] the story" runs counter to our recent precedent and is not dispositive on the issue of relevance or the ultimate admissibility of the drug evidence. In the wake of several cases in which we expressed our "criticism of [such] tongue-twisting formulas," *see United States v. Edwards*, 581 F.3d 604, 608 (7th Cir. 2009); *United States v. Harris*, 536 F.3d 798, 807 (7th Cir. 2008); *United States v. Taylor*, 522 F.3d 731, 735 (7th Cir. 2008) (finding the "inextricably interwoven" test unsatisfactory because its "vagueness invites prosecutors to expand the exceptions to the rule beyond the proper boundaries of the exceptions"), we definitively concluded that "resort to inextricable intertwinement is unavailable when determining a theory of admissibility." *United States v. Gorman*, 613 F.3d 711, 719 (7th Cir. 2010). Instead, we focus our analy-

sis on the government's argument, and the district court's additional reasoning, that the evidence was relevant to establish Schmitt's motive for possessing a gun. Because motive is an "express exception[] to the Rule 404(b) bar[,] there is no need to spread the fog of 'inextricably intertwined' over [it]." *Harris*, 536 F.3d at 807 (quoting *Taylor*, 522 F.3d at 735); *Taylor*, 522 F.3d at 735 (recognizing that "[a]lmost all evidence admissible under the 'inextricably interwoven' doctrine is admissible under one of the specific exceptions in Rule 404(b)").

The issue of motive was relevant at trial to establish that Schmitt possessed the firearm. In order to convict on the felon-in-possession charge, the government had to prove that (1) Schmitt was a felon, (2) he possessed a firearm, and (3) the firearm had traveled in interstate commerce. *See Harris*, 587 F.3d at 866. Schmitt stipulated that he was a felon and that the firearm traveled in interstate commerce before it was found in his basement, so the only element at issue was whether he possessed the firearm. For the purposes of 18 U.S.C. § 922(g)(1), possession can be actual or constructive. *Id.* Although there was evidence that Schmitt actually possessed the gun when he purchased it, he was not caught with the gun red-handed, so the government's case was strengthened by proof that Schmitt constructively possessed the gun. "Constructive possession is a legal fiction whereby a person is deemed to possess contraband even when he does not actually have immediate, physical control of the object." *United States v. Griffin*, 684 F.3d 691, 695 (7th Cir. 2012). Establishing that the defendant had exclusive control over the property where the firearm is found can be sufficient to show constructive possession, *id.*, but the evidence showed that Schmitt shared the residence with his girlfriend. In

proving constructive possession in the context of a joint residence, "mere proximity to contraband is not enough. . . . Rather, 'proximity coupled with evidence of some other factor—including connection with [an impermissible item], *proof of motive*, a gesture implying control, [among others] is enough to sustain a guilty verdict.'" *Id.* at 696 (quoting *United States v. Morris*, 576 F.3d 661, 668 (7th Cir. 2009)) (emphasis added). Since proof of motive is one way to establish constructive possession in joint residence cases, motive was at issue in Schmitt's trial.

And the evidence proffered by the government was relevant to motive. The testimony that Schmitt was a drug dealer and that drugs were found in his home when he was arrested was relevant to suggest to the jury why he would have a firearm. *See* Fed. R. Evid. 401 (evidence is relevant if it tends to make a fact that is of consequence in determining the action more probable than it otherwise would be); *United States v. Elder*, 466 F.3d 1090, 1091 (7th Cir. 2006) (recognizing that "drug dealers often use guns and knives to protect their operations"). The drug dealing evidence could help convince a reasonable jury that Schmitt possessed the firearm found in his home, a fact that the government had to prove to secure his conviction for being a felon in possession of a firearm. *See* 18 U.S.C. § 922(g)(1); *see also United States v. Lloyd*, 71 F.3d 1256, 1264 (7th Cir. 1995) (finding "motive to possess a firearm" relevant in felon-in-possession prosecution "because it ma[de] possession more probable than it would be without the evidence" (internal quotations, citations, and alterations omitted)).

Moreover, introducing the evidence as indicative of Schmitt's motive provided a "propensity-free chain of rea-

soning" for the evidence's admission. *See Gomez*, 763 F.3d at 856. Looking to the inferences the jury was being asked to draw, it becomes clear that the government used the other bad acts evidence to establish why Schmitt would have a gun, and not simply to suggest that Schmitt engaged in illicit conduct in the past and so must have had the propensity to do it again. By introducing evidence that Schmitt was a drug dealer and had large quantities of drugs in his home when he was arrested, the government was not asking the jury to believe that because Schmitt was the type of person who would break the law once, he must be the type of person who would break the law again. That is the inference that Rule 404(b) was designed to prevent. *See United States v. Cunningham*, 103 F.3d 553, 556 (7th Cir. 1996). Instead, the government was asking the jury to use the evidence to find that Schmitt had a gun *because* he was a drug dealer; or in other words, that the gun was intended to further his drug dealing activities. That is a proper inference for the jury to draw from other-acts evidence. *See United States v. Caldwell*, 423 F.3d 754, 759 (7th Cir. 2005) (finding evidence admissible even if "it portrayed him as a wealthy drug dealer" since "other act evidence is admissible under 404(b) to establish proof of motive"); *Lloyd*, 71 F.3d at 1264 (affirming admission of evidence of gang affiliation, assassination attempts made on defendant's life, and his use of armed guards to show motive in felon-in-possession prosecution); *see also Cunningham*, 103 F.3d at 556 (finding that propensity and motive evidence do not overlap when the other-act evidence shows a "desire for pecuniary gain or for some other advantage to which the crime is instrumental in the sense that it would not be committed if the advantage could be obtained as easily by a lawful route"). The evidence that

Schmitt exchanged drugs for the gun is another example of him dealing in drugs, and was similarly admissible to establish motive.

The next question is whether Rule 403 applied to keep the evidence out, because "even if other-act evidence is relevant without relying on a propensity inference, it may be excluded under Rule 403." *Gomez*, 763 F.3d at 856. That rule allows for the exclusion of relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice or confusing the jury. *See* Fed. R. Evid. 403. "Evidence is unfairly prejudicial if it induces the jury to decide the case on an improper basis rather than on the evidence presented." *United States v. Haldar*, 751 F.3d 450, 458 (7th Cir. 2014) (quoting *United States v. Conner*, 583 F.3d 1011, 1025 (7th Cir. 2009)). The danger of admitting evidence from which the jury could draw a propensity inference is that, regardless of the reason the evidence was actually admitted, the jury might still draw that improper inference. *See Miller*, 673 F.3d at 696 ("Almost *any* bad act evidence simultaneously condemns by besmirching character and by showing one or more" of the purposes listed in Rule 404(b) (quoting *United States v. Beasley*, 809 F.2d 1273, 1279 (7th Cir. 1987) (emphasis in original)). That inherent risk of prejudice against the defendant is unavoidable, and excluding other-acts evidence on that basis would make it nearly impossible to ever admit such evidence. But there are steps the district court can take to minimize the risk. In determining "whether that risk is sufficiently outweighed by other factors," as the district court must do, *see Gomez*, 763 F.3d at 857, the court should consider  whether the fact to which the evidence pertains is seriously contested and whether a jury instruction could cure the potential prejudicial effect. *Id.* at 857, 860;

*Harris*, 587 F.3d at 866 (citing *United States v. Jones*, 455 F.3d
800, 809 (7th Cir. 2006), for its observation that "we have
held that such instructions are effective in reducing or elimi-
nating any possible unfair prejudice from the introduction of
Rule 404(b) evidence").

The danger of unfair prejudice did not substantially out-
weigh the probative value of the drug evidence in this case
as it was highly probative. The government was required to
prove that Schmitt possessed the firearm, and Schmitt did
not concede the point. *Cf. Old Chief v. United States*, 519 U.S.
172, 191 (1997) (finding that a defendant's stipulation to a
fact at issue makes facts that tend to prove the stipulated fact
no longer probative). The judge also instructed the jury of
the limited way that it could consider the drug evidence,
stating that it was relevant only in deciding whether Schmitt
had the intent and "a motive to possess the firearm charged
in the indictment." And there was not an especially dispro-
portionate risk that "the emotions of the jury [would] be ex-
cited to irrational behavior." *See United States v. Loughry*, 660
F.3d 965, 974 (7th Cir. 2011). The evidence of Schmitt's al-
leged drug dealing and of the drugs found in his home was
admissible under Rule 404(b).

Prior convictions, however, are highly prejudicial, and
the district court did not abuse its discretion in initially ex-
cluding evidence of Schmitt's conviction for possessing the
drugs found in his home. The government initially complied
with that ruling, but it sought to admit testimony and
Schmitt's conviction record showing that Schmitt pled guilty
to possessing those drugs after Wyatt testified that the drugs
found in the house were his. Schmitt has called foul, but the
government responds that Schmitt "opened the door" to the

evidence regarding his state court convictions when he asked Wyatt, on cross-examination, whether the drugs in the house belonged to Wyatt. A defendant "opens the door" to otherwise inadmissible evidence when he affirmatively and "genuinely place[s] at issue the specific matter that the evidence is being offered to establish." *Lee*, 724 F.3d at 977; *see United States v. Touloumis*, 771 F.2d 235, 241 (7th Cir. 1985) ("[A] party cannot be permitted on the one hand to introduce evidence that appears favorable to his argument and then complain, after the circumstances are fully developed, because the evidence becomes detrimental to his cause.").

The wrinkle in the government's argument is that the implication that some of the drugs found on the scene were Wyatt's was first raised during direct examination when Wyatt was being questioned by the government.

Q: Why would you go over [to Schmitt's house]?

A: Usually get him high.

…

Q: Okay. Do you recall what you and Mr. Schmitt were doing just prior to the police coming in?

A: Yeah. I just got there, you know, just got there, had some meth, so I broke it out, was getting him high….

Tr. Vol. I – 100-01.

Defense counsel seized on this opportunity during his cross-examination. Even though the methamphetamine was the only drug mentioned during direct, defense counsel asked about the marijuana and pills as well. He pointed to specific exhibits of the drugs found in the home and secured

Wyatt's admission that they all belonged to him. Wyatt even said that he had told officers the day that he and Schmitt were arrested that the drugs and scale were his. The government argued that this "opened the door" not only to testimony that Schmitt pled guilty to possession of those same drugs, but to admitting the record of conviction as well. Over defense counsel's Rule 403 objections, the judge allowed both the testimony and admittance of the conviction record, finding the government "entitled to put that evidence in, considering the defense posture in this case they're going to indicate that they were not his drugs, Mr. Schmitt's drugs; they were Mr. Wyatt's drugs …. We are trying to seek the truth here."

The door that was opened by Wyatt's testimony was cracked open through direct examination of the government's own witness. Government officials dealing with witnesses who may later become uncooperative would be wise to secure their grand jury testimony while they are still cooperating. Had the government done so, it would have been free to impeach Wyatt by introducing evidence of his grand jury testimony that would have been substantive evidence under Rule 801(d)(1)(A). *See* Fed. R. Evid. 801(d)(1)(A) advisory committee note (stating that the rule protects a party from "the 'turncoat' witness who changes his story on the stand and deprives the party calling him of evidence essential to his case"). Just because the government fails to prepare for a scenario in which Wyatt would change his story does not give it free rein to bolster its case by whatever means possible.

But that is not the end of the story. Although the government cracked open the door, Schmitt swung it wide open

by giving Wyatt an opportunity to claim that *all* the drugs were his, which brought motive into "meaningful[] dispute[] by the defense." *See Miller*, 673 F.3d at 697; *Gomez*, 763 F.3d at 858-60. During his testimony as part of the government's direct examination, Wyatt only claimed that the methamphetamine found on the scene belonged to him. But the quarter gram of methamphetamine recovered when the pair was arrested was, as Det. Georgen testified, an amount a user would have, so Wyatt's admission that those drugs were his did not contradict the government's theory that Schmitt had the gun to protect his drug *dealing*. The marijuana, which was found in dealer quantities, established Schmitt's motive for having a gun, and it was during Schmitt's cross-examination of Wyatt, not on direct examination, that Wyatt claimed that the marijuana was his as well.

> Q: Beside that cellphone is—what's that … white thing?
>
> A: It's probably some of the meth I brought that we was smoking. …
>
> Q: You brought it there? That's yours?
>
> A: Yes, sir.
>
> …
>
> Q: You were wearing that coat [where the pills and scale were found], weren't you, when you arrived?
>
> A: Yeah, that's my coat.
>
> …
>
> Q: Now, that marijuana also belonged to you, did it not?

A: Yes, sir. I even told the police that day that.

Tr. Vol. I – 107-08.

Through questioning Wyatt about the marijuana, Schmitt put on affirmative evidence to deny that he possessed the marijuana. This was relevant to convince the jury that he was not dealing drugs out of his house at the time that the gun was found and did not have a motive to have a gun. By putting on evidence regarding who possessed the drugs in the house and disputing motive, Schmitt "opened the door" to evidence that he was convicted of possessing the marijuana. *See United States v. Miller*, 673 F.3d 688, 697 (7th Cir. 2012) (finding that a permissible purpose for admitting other-acts evidence "becomes more relevant, and evidence tending to prove [it] becomes more probative, when the defense actually works to deny [it], joining the issue by contesting it"); *United States v. Douglas*, 408 F.3d 922, 929 (7th Cir. 2005) ("When a defendant 'opens the door' … by offering … testimony inconsistent with the facts underlying an earlier conviction, the government may inquire into the details of the conviction."); *see also United States v. Senffner*, 280 F.3d 755, 763 (7th Cir. 2002) (defendant opened the door when he introduced misleading evidence and the government was allowed to rebut it). Before admitting the evidence of Schmitt's conviction, the trial judge considered the fact that defense counsel planned to highlight Wyatt's admissions in his closing argument, a fact that strengthened the government's case for bringing in the convictions. *See Manuel v. City of Chicago*, 335 F.3d 592, 597 (7th Cir. 2003) (noting that after the door is opened, the district court must "weigh the need for and value of curative admissibility of previously inadmissible evidence against … prejudice"). The district court did not err in

admitting evidence that Schmitt was convicted of possessing the drugs in his home in light of Schmitt's attempt to deny that he owned the drugs and therefore had a motive to have the firearm. *United States v. Anifowoshe*, 307 F.3d 643, 649 (7th Cir. 2002) ("[W]hen a party questions a witness on a subject, … the party cannot complain on appeal if the opposing party subsequently introduces evidence on the same subject.").

Of course, the government is not free to introduce all sorts of evidence simply because the defense opened the door to one piece of evidence. Defense counsel did not open the door to evidence of who possessed the methamphetamine in the house. As we mentioned, Wyatt's admission to possessing those drugs came out during the government's direct examination. So the government was in no position to cure a problem that its own witness created on direct examination by impeaching the witness with Schmitt's conviction for the methamphetamine. That would be extremely prejudicial to Schmitt, since he was not the one testifying and did not open the door to that evidence. *See* Fed. R. Evid. 609 (allowing the government to impeach a witness by evidence of a criminal conviction, but subject to Rule 403). The defense, through its questioning of Wyatt, contested motive and made evidence going to that issue more probative. But the defense's questioning did not make the issue of who possessed the user quantity of methamphetamine that was found in Schmitt's home any more relevant. Since information that Schmitt was convicted of possessing the methamphetamine was part of the conviction record, but was not relevant for any purpose other than to impeach the government's witness, the district court should have redacted the portion of the conviction record pertaining to the methamphetamine, or simply allowed the government to read the

relevant portion of the conviction into the record. But the prosecution's case would not have been "significantly less persuasive had the improper evidence been excluded." *Loughry*, 660 F.3d at 975. There was already ample evidence before the jury to suggest that Schmitt was a drug dealer, which could lead a reasonable juror to infer that he had a reason to have a firearm. Being a user of drugs does not necessarily carry the same connotation, so removing the additional evidence that Schmitt used methamphetamine and pills would not have made the government's case that he possessed the firearm "significantly less persuasive." So we find that the error in admitting it was harmless.

### C. No Error in Schmitt's Sentence

Schmitt's final argument is that the district court erred in determining his offense level for sentencing purposes. Our review of the district court's application of sentencing guidelines is de novo, but we review for clear error when the application of a sentencing guideline is based on factual findings. *United States v. Meece*, 580 F.3d 616, 620 (7th Cir. 2009).

Schmitt argues that the district court erred in applying a four-level enhancement to his offense level under United States Sentencing Guideline § 2K2.1(b)(6)(B) because the gun was not used or possessed "in connection with" another felony offense because the firearm was only in his home for a day and was not readily accessible in the basement. "Review of a district court's sentencing enhancement under U.S.S.G. § 2K2.1(b)(6) is a mixed question of fact and law that we review for clear error." *Id.* at 620-21 (quoting *United States v. Markovitch*, 442 F.3d 1029, 1031 (7th Cir. 2006) (internal alterations omitted)).

United States Sentencing Guideline § 2K2.1(b)(6)(B) calls for a four-point enhancement to a defendant's base offense level if the defendant "[u]sed or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). The second clause of the provision refers to a defendant's actions which facilitate another person's commission of a felony offense, *see United States v. Lang*, 537 F.3d 718, 721 (7th Cir. 2008), which is not at issue here. So we are left to consider whether Schmitt used or possessed the AR-15 assault rifle in connection with another felony offense.

There are two ways to approach this question. The enhancement would be proper if Schmitt "used or possessed" the firearm in connection with (1) his general drug dealing activities in his home or (2) the purchase of the firearm, which he allegedly bought with drugs. Because we find that Schmitt possessed the gun in connection with the drug deal he allegedly executed to buy the firearm, we need not decide whether the firearm was close enough in proximity to the drugs or in a readily accessible place sufficient to raise the inference that Schmitt had the firearm "in connection with" his general drug dealing activities. *See* U.S.S.G. § 2K2.1(b)(6)(B), application note 14 (clarifying that the subsection applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia").

The district court did not clearly err in applying the enhancement because the preponderance of the evidence supported a finding that Schmitt possessed the firearm in connection with another felony offense, namely selling drugs to obtain the firearm. There was unrebutted evidence that Schmitt intentionally purchased the firearm in exchange for cash and methamphetamine. While that conduct does not constitute "use" under the provision, *see Lang*, 537 F.3d at 720-21 (finding that exchanging a gun for drugs was properly characterized as "use" of firearm for purposes of § 2K2.1(b)(6)(B) enhancement, but clarifying that buyer of gun does not "use" the firearm in conducting the transaction), the district court did not err in finding Schmitt's actions constituted "possession" of the firearm in connection with a felony offense.

We have previously looked to 18 U.S.C. § 924(c)(1) to guide our understanding of § 2K2.1(b)(6)(B), *see Lang*, 537 F.3d at 720 (to define "use"); *Wyatt*, 102 F.3d at 247 (to define "in connection with"), and it is similarly illustrative here. That statute prescribes an increased penalty for "any person … who, in furtherance of" a drug trafficking crime or crime of violence "possesses a firearm." 18 U.S.C. § 924(c)(1). In that context, we have said that "when a defendant receives a gun for drugs, he takes possession of the firearm in a way that furthers, advances, or helps forward the distribution of drugs." *United States v. Doody*, 600 F.3d 752, 755 (7th Cir. 2010) (internal quotations and alterations omitted). So too here. When Schmitt exchanged the gun for drugs, he took control of it in a way that was intentionally related to the drug trafficking offense. *See Wyatt*, 102 F.3d at 247 (the government must only prove "by a preponderance of the evidence that the firearm served some purpose with respect to

the felonious conduct" to meet the provision's "in connec-
tion with" requirement); *see also Smith v. United States*, 508
U.S. 223, 224 (1993) (interpreting § 924(c)(1)'s "in relation to"
language to require that the firearm's presence "cannot be
the result of accident or coincidence"). The evidence sug-
gests that Schmitt's entire purpose in meeting with
Hutchinson and his friend was to purchase the firearm, so
the firearm's presence was not "merely coincidental to [felo-
nious] conduct." *See Wyatt*, 102 F.3d at 247. Schmitt's sale of
illicit drugs facilitated his purchase and possession of the
AR-15 rifle, and we cannot say that the court's determination
that the enhancement applied was clearly erroneous.

Schmitt ends with his argument that the district court
erred in rejecting his request for a two-level sentence reduc-
tion for accepting responsibility. Schmitt fails to meet his
burden of showing that the district court's decision was er-
roneous. *See Meece*, 580 F.3d at 620-21. In asking for leniency,
Schmitt admitted *at sentencing* that he possessed the gun and
used drugs, and suggested that he only went to trial because
the government did not give him a good plea deal. Though
it is to Schmitt's credit that he admitted to some of his ac-
tions, "[o]rdinarily a defendant who chooses to go to trial
and force the government to prove his guilt is not eligible to
receive a sentence reduction for acceptance of responsibil-
ity." *United States v. Williams*, 202 F.3d 959, 962 (7th Cir.
2000). We see no reason to treat this as an extraordinary case.
*See id.* (finding that the "Guidelines contemplate an excep-
tion for defendants who proceed to trial solely to challenge
… the constitutionality of a statute" or other question of
law). Schmitt's admission was too little too late and the court
did not err in denying his request for a reduction based on
acceptance of responsibility. *See* U.S.S.G. § 3E1.1, application

note 1(H) (noting that a factor in determining if defendant qualifies for the reduction is "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility").

### III. CONCLUSION

Kenneth Schmitt's conviction and sentence are AFFIRMED.