In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1311

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

RONALD NORWEATHERS, also known
as Tandy3100, also known as
Tame 181,

*Defendant-Appellant*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 09 CR 1047 — **Joan Humphrey Lefkow**, *Judge.*

ARGUED MAY 23, 2018 — DECIDED JULY 10, 2018

Before WOOD, *Chief Judge,* and BAUER and ROVNER, *Circuit Judges.*

BAUER, *Circuit Judge.* A jury convicted Ronald Norweathers of two counts of transporting child pornography and one count of possessing child pornography. Prior to trial, the government

sought a ruling on the admissibility of an email exchange between Norweathers and another individual, in which they discussed drugging and having sex with young boys. The district court ruled the evidence was admissible under Federal Rules of Evidence 403 and 404(b), and the government introduced it at trial. On appeal, Norweathers contends the admission of the emails was an error that deprived him of a fair trial. We affirm.

## I. BACKGROUND

On July 15, 2009, a grand jury returned a four-count superseding indictment charging Norweathers with three counts of transporting child pornography in violation of 18 U.S.C. § 2252A(a)(1) (Counts One, Two, and Three), and one count of possessing a computer hard drive containing images of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(b) (Count Four). The charges stemmed from an FBI investigation that culminated in the execution of a search warrant on December 19, 2009, at the address of 1-800-Radiator, a business located in Rolling Meadows, Illinois, where Norweathers worked as the operations manager.

In their initial search, FBI agents found approximately 50 images of child pornography on a desktop computer at Norweathers' workstation. Those images served as the basis for Count Four of the indictment. The agents later obtained a warrant to search an email account with the username "tame181@yahoo.com," which they believed was Norweathers' personal account. That search revealed that on March 13, 2009, the tame181@yahoo.com username sent an email containing 78 images, the vast majority of which were images of child

pornography. The agents also found an email sent on August 4, 2009, which contained four images of child pornography. The August 4, 2009, email and the March 13, 2009, email (collectively, "the charged emails") formed the basis for Counts Two and Three of the indictment, respectively. The government eventually dismissed Count One, and Norweathers proceeded to trial on Counts Two, Three, and Four.

Before trial, the government filed a notice of intent to offer evidence of other bad acts pursuant to Federal Rule of Evidence 404(b)(2). Specifically, the government sought to admit the following email exchange ("the uncharged emails"), which occurred between tame181@yahoo.com and another individual on November 12, 2008 [all misspellings uncorrected]:

> *To tame181@yahoo.com*:  I've always wanted to get a kid fukd up and use his holes, man
>
> *From tame181@yahoo.com*: well give me a minimum age to work off of
>
> *To tame181@yahoo.com*:  10
>
> *From tame181@yahoo.com*:  wow, that could be interesting to watch, but you would probably do damage if you're rough. I know where to get younger too
>
> *To tame181@yahoo.com*:  4yr old?
>
> *From tame181@yahoo.com*:  would you seriously put you cock in something that little?

*To tame181@yahoo.com*: What's a good age then, man … ideally he'd be 12 or 13

*From tame181@yahoo.com*: 6 could be cool, they would cry and scream though

*To tame181@yahoo.com*: Would my cock fit!?

*From tame181@yahoo.com*: not comfortably.. :-) but yes it would fit,

*To tame181@yahoo.com*: nice

*From tame181@yahoo.com*: Would you wanna do something like that stud. and how much is the G? and how much do I need?

*To tame181@yahoo.com*: i'd be interested in it, yeah. if u say u got away with it, I prob could.

*From tame181@yahoo.com*: my bud wants to fist his boi and he's agains it...so he wants to G so he can do it anyway, but he needs to be totally out for a while

*To tame181@yahoo.com*: ok. you won't need much then 25 bucks worth maybe.

*From tame181@yahoo.com*: ok explain how we use it i've never done it before.....how long will it keep him out and how out will he be?

*To tame181@yahoo.com*: You'll have to measure it. 2cc is normal dose. 5cc will pass him out so nothing can wake him up for at least an hour.

> *From tame181@yahoo.com*: mix it with alcohol, or anything?
>
> *To tame181@yahoo.com*: mix it with juice. alcohol could be dangerous
>
> *From tame181@yahoo.com*: does it have any taste? how long until it works
>
> *To tame181@yahoo.com*: yes, tastes bad. works w/in 5 to 10 mins. wears off in and hour to an hour and a half usually . . .
>
> *From tame181@yahoo.com*: So basicly I need to put it in something that he's not used to the taste so he wont notice

The government argued that the uncharged emails were admissible under Rule 404(b) for purposes of proving identity, intent, and motive. Norweathers argued first that the uncharged emails were impermissible propensity evidence, and second that even if they were relevant for a non-propensity purpose, their probative value was substantially outweighed by the danger of unfair prejudice, and therefore, were inadmissible pursuant to Rule 403.

In a written ruling, the district court engaged in an analysis under both Rules 404(b) and 403 and held that the uncharged emails were admissible. As to Rule 404(b), the court found that the government had established a propensity-free chain of reasoning to support its use of the uncharged emails, namely that they tended to weaken Norweathers' anticipated defense that a different person briefly logged into his account to distribute the pornographic material. Moving on to Rule 403,

the court acknowledged that the uncharged emails carried considerable prejudice because of their sexual nature and potential to lead to a propensity inference. The court noted, however, that Norweathers did not dispute that the issues of identity and intent would be contested at trial. Therefore, because the uncharged emails could be used to show that Norweathers, and not another individual, sent the charged emails, and that he knew the emails contained images of child pornography, the court held that their probative value was not substantially outweighed by the danger of unfair prejudice. Finally, the court urged the parties to confer on the possibility of a stipulation or proposed jury instruction, in an effort to decrease the potential for unfair prejudice.

The trial began on November 16, 2015. The FBI agents who executed the search warrant at 1-800-Radiator testified that Norweathers was not initially present, but when he returned to the premises, he waived his *Miranda* rights and agreed to speak with them. The agents testified that in response to their questions, Norweathers stated that he viewed, downloaded, and traded images of child pornography, that the images on the desktop computer were his, and that he traded images of child pornography two to three times per week using his Yahoo email account and a peer-to-peer sharing program. He provided agents with his usernames and passwords, one of which was the tame181@yahoo.com account.

In that account, the agents found emails indicating that Norweathers used the account for personal business during the same time period in which the charged emails were sent. For example, they found emails containing information from bank accounts in Norweathers' name, as well as receipts for online

orders of various items and services that contained Norweathers' name and home address. The government also elicited testimony to demonstrate that one of the charged emails (the August 4, 2009, email) was sent from an IP address that was issued to 1-800-Radiator by its internet service provider.

Before the uncharged emails were admitted at trial, the parties engaged in a colloquy with the court outside the presence of the jury regarding a proposed jury instruction on the uncharged emails. During the discussion, Norweathers' counsel renewed his objection to the admission of the emails, but did not argue the point further. The government explained to the court that it had offered Norweathers' counsel a stipulation to redact and "sanitize" the uncharged emails before presenting them to the jury, and that Norweathers' counsel had rejected the stipulation. Norweathers' counsel confirmed the government's account of the proposed stipulation. Per the parties' agreement, the following jury instruction was read at the time the government introduced the uncharged emails, as well as at the end of trial:

> Members, of the jury, you're about to hear evidence that the defendant sent emails, other than the ones charged in the indictment. Before using this evidence, you must decide whether it is more likely than not that the defendant did send the emails that are not charged in the indictment. If you decide that he did, you may consider this evidence to help you decide the identity, motive, and knowledge of the person

who sent the charged emails. You may not
consider it for any other purpose.

After the government rested its case-in-chief, Norweathers
testified in his own defense. First, he denied that he made any
incriminating statements to the FBI agents on the day the
search warrant was executed. He admitted, however, that the
tame181@yahoo.com account was his personal email account
and that he sent the charged emails. Norweathers testified that
he believed the recipient of the emails was an FBI agent and
that he was attempting to assist in an investigation into child
pornography distribution. Norweathers was not asked and did
not testify about the uncharged emails.

In rebuttal, the government called witnesses to testify that
Norweathers was never a cooperating source for the FBI, and
that the recipient of the charged emails was not an FBI agent.
On November 19, 2015, the jury found Norweathers guilty on
all three counts. The district court sentenced him to 250
months' imprisonment, and Norweathers timely appealed.

## II.  ANALYSIS

Norweathers argues that the court's decision to allow the
government to present the uncharged emails to the jury
deprived him of a fair trial due to the inflammatory nature of
the emails. We review a district court's decision to admit
evidence of other bad acts for an abuse of discretion. *United
States v. Schmitt*, 770 F.3d 524, 532 (7th Cir. 2014). "Under this
standard, we will defer to the district court unless no
reasonable person could adopt its view." *Id.* Even if we make
such a finding, reversal is only warranted "if the 'average juror
would find the prosecution's case significantly less persuasive

without the improper evidence.'" *Id.* (quoting *United States v. Garcia-Avila*, 737 F.3d 484, 490 (7th Cir. 2013)).

Federal Rule of Evidence 404(b) prohibits the use of evidence of a defendant's other bad acts to show his propensity to commit a crime. Fed. R. Evid. 404(b)(1); *Schmitt*, 770 F.3d at 532. However, this type of evidence may be admissible for other purposes, such as proving motive, intent, knowledge, or identity. Fed. R. Evid. 404(b)(2). As we have explained, though, simply identifying a proper purpose is not enough. *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) (*en banc*). "[T]he Rule allows the use of other-act evidence only when its admission is supported by some propensity-free chain of reasoning." *Id.* Still, even if the proper purpose and chain of reasoning are established, the evidence may be excluded under Rule 403 if its probative value is substantially outweighed by a danger of unfair prejudice. *Id.* at 856–57.

Before Norweathers took the witness stand, the government had no indication he would testify that he believed he was working with the FBI. Until that time, Norweathers made it apparent that he intended to defend against the charges by arguing that someone else sent the charged emails, and that he did not know that his computer hard drive contained images of child pornography.

At the time of the district court's written ruling, Norweathers did not dispute that the issues of identity and intent would be contested at trial. Then, in his opening statement, Norweathers' counsel reminded the jury numerous times that the specific issue at trial was not whether Norweathers' computer or his email account contained child pornography,

but whether Norweathers himself was responsible for sending the emails and possessing the images. Additionally, through his cross-examinations of government witnesses, defense counsel suggested that the computer's location in an open workspace and its lack of password protections indicated that anyone could have accessed it. He questioned the government's computer forensics witness about the possibility of someone adding files to the hard drive before it was stored and logged as evidence. Defense counsel also asked one of the FBI agents whether a computer virus could have been responsible for the charged emails' content. Thus, before Norweathers testified, it was more than reasonable to assume that his defenses were based on the issues of identity and intent.

In light of those anticipated defenses, it is easier to identify the relevance of the uncharged emails to particular facts of consequence, without leading to a propensity inference. *See id.* at 856 ("[W]e have more recently emphasized the importance of identifying the non-propensity theory that makes the other-act evidence relevant and specifically asking *how* the evidence tends to make a particular fact of consequence more or less likely."). The fact that Norweathers used the tame181@yahoo.com account to discuss his sexual proclivity for young children, if proven, would tend to make it more likely that Norweathers, and not someone else, used that account to send emails containing images of child pornography. That same fact would also tend to make it more likely that he intentionally, rather than unwittingly, sent the charged emails and possessed the pornographic images located on his hard drive.

There is, undoubtedly, a fine distinction between the emails' tendency to prove identity and intent and the possibility that the same evidence could lead to an impermissible propensity inference (*i.e.*, that someone who engages in such an illicit discussion is more likely to have possessed and transported child pornography). But, Rule 404 does not require exclusion simply because a propensity inference *can* be drawn. *Id*. "[R]ather, Rule 404(b) excludes the evidence if its relevance to 'another purpose' is established *only* through the forbidden propensity inference." *Id.* Here, because we can identify a chain of reasoning demonstrating the emails' relevance to identity and intent that does not *necessarily* lead to a propensity inference, we cannot say the district court abused its discretion in finding them admissible under Rule 404.

Norweathers argues though, as he did in the district court, that Rule 403 prevents the uncharged emails' admissibility notwithstanding any 404(b) analysis. Without question, the uncharged emails are inflammatory and the prejudice they present is obvious. However, as we have explained, they were also highly probative of the issues that, at the time, appeared to be central to Norweathers' anticipated defense. *See id.* at 857 ("[T]he degree to which the non-propensity issue actually is disputed in the case will affect the probative value of the other-act evidence."). It is also difficult for Norweathers to rely on the emails' prejudicial value as a reason for exclusion, given that the government offered to present a less prejudicial, sanitized version of the exchange, and he rejected it. Under the circumstances, the district court's conclusion under Rule 403 was not unreasonable, and therefore, it did not abuse its discretion. *See Schmitt*, 770 F.3d at 532 ("[W]e will defer to the

district court unless no reasonable person could adopt its view.").

However, even if it was error for the court to admit the uncharged emails, it was not reversible error. As an initial matter, while it is clear that the jury rejected the explanation Norweathers gave from the witness stand, we acknowledge that Norweathers' testimony should not factor into any harmless error analysis. It is fair to assume that his defense strategy changed once the uncharged emails were admitted. Without those emails, he may well have declined to testify and offer the explanation he did.

Still, without considering the uncharged emails and Norweathers' admissions on the witness stand, there was substantial evidence for the jury to rely upon for a guilty verdict. The government did mention the uncharged emails in its closing argument, but placed little reliance on them. Instead, the government highlighted the IP address evidence linking the charged email to Norweathers' workplace, the evidence tying Norweathers to the tame181@yahoo.com account, and perhaps most significantly, Norweathers' admissions to FBI agents on the day of the search. With that evidence in mind, we are not convinced that the jury would have found the government's case significantly less persuasive absent the uncharged emails. *See id.* Therefore, reversal is not warranted.

### III.  CONCLUSION

For the foregoing reasons, the conviction is AFFIRMED.